JUNJI SUZUKI (SBN 184738)
junji@marshallsuzuki.com
MARSHALL SUZUKI LAW GROUP, LLP
230 California Street, Suite 415
San Francisco, CA 94111
Telephone: (415) 618-0090
Facsimile: (415) 618-0190
Attorney for Applicant,
Shueisha Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In re Ex Parte Application of<br><br>SHUEISHA INC.,<br><br>Applicant. | ) ) ) ) ) ) ) ) | Case No: 5:21-mc-80255<br><br>**DECLARATION OF HIROYUKI NAKAJIMA IN SUPPORT OF EX PARTE APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 PERMITTING DISCOVERY FOR USE IN FOREIGN PROCEEDING** |

I, the undersigned, declare as follows:

1. I am an attorney duly licensed to practice law in Japan and employed at Tokyo Flex Law Office. Applicant, Shueisha Inc. ("Applicant"), a corporation organized and existing under the laws of Japan, retained me and my firm to initiate a civil lawsuit against those liable for copyright infringement in Japan as soon as their identities have been ascertained through discovery.
2. I have personal knowledge of each matter stated herein.
3. I submit this declaration in support of Applicant's Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 (the "Application").
4. Applicant is a well-known publisher in Tokyo, Japan of a wide variety of genres and mediums, including comic books, literature, magazines, and educational books.

-Page 1 of 8-

**In re Ex Parte Application of Shueisha Inc.**
Declaration of Hiroyuki Nakajima in Support of Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding

5. It has recently come to Applicant's attention that certain users (each the "Infringer" and collectively the "Infringers") using services provided by Hurricane Electric LLC ("HE") and Google, LLC ("Google") (collectively as "Witnesses") uploaded on their pirate websites located at https://ssl.axax.cloud/, https://ssl.advx.cloud/, https://ssl.akkx.net/, https://ssl.sdox.cc/, https://ssl.standardcdn.net/, https://ssl.lsh.buzz/, https://ssl.appx.buzz//, https://ssl.asiax.cloud/, https://ssl.appsx.cloud/, respectively (collectively the "Infringing Websites"), an extensive amount of unauthorized copies of the Applicant's copyrighted comic books. Such illegal copies mostly contain the entire pages of the book or volume and some of the illegal copies were uploaded on the Infringing Websites soon after publication. The Infringing Websites were all connected to the main website located at https://mangabank.org/ (the "Main Infringing Website"), which is written in Japanese and invites viewers to search infringing material by titles, authors, and other keywords, seemingly catered to Japanese language viewers. The Infringers, the infringing copies located at the Infringing Websites (collectively the "Infringing Work"), and the comic books, the exclusive right of which are owned by Applicant (collectively the "Original Work"), are identified in Exhibit A attached hereto.

6. Considering the facts above, it is my opinion as a Japanese lawyer that the Infringing Work constitutes copyright infringement under Japanese law[1] and Applicant, as the copyright owner under the Berne Convention for the Protection of Literary and Artistic Works[2], can also enforce protections guaranteed under United States copyright law.

7. Applicant intends to bring a lawsuit and in Japan against the person(s) associated with the Infringers and the Infringing Work as soon as the person(s)' identities have been ascertained through the discovery sought by the Application.

---

[1] Copyright Act, Articles 21 & 23; https://elaws.e-gov.go.jp/document?lawid=345AC0000000048; http://www.japaneselawtranslation.go.jp/law/detail/?id=2506&vm=04&re=01.

[2] Berne Convention for the Protection of Literary and Artistic Works, art. 5, ¶¶ 1 & 2, opened for signature Sept. 9, 1886, 331 U.N.T.S. 217 (codified as amended at Pub. L. No. 100-568, 102 Stat. 2853 (1988)) (joined by the United States on March 1, 1989); https://wipolex.wipo.int/en/text/283693.

-Page 2 of 8-

**In re Ex Parte Application of Shueisha Inc.**
Declaration of Hiroyuki Nakajima in Support of Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding

8. In order to identify the persons who committed unlawful acts against Applicant through their Infringing Website, it is crucial for Applicant to obtain the information relevant thereto. In particular, the information relating to the Witnesses' accounts, as specified in the proposed subpoena concurrently filed with the Application, would be critical and highly relevant in identifying the perpetrators.

9. Applicant first attempted to obtain the identifying information about the Infringers through subpoenas issued under 17 U.S.C. § 512(h) (collectively the "DMCA Subpoena") from Cloudlfare, Inc. ("Cloudflare"), which provided online and network services to the Infringers. However, such efforts did not produce the information sufficient to locate the Infringers. The Cloudflare Response (as defined below) revealed that the Infringers used the services provided by Witnesses in connection with their Infringing Websites. Based on the Cloudflare Response and my investigation, (i) the server services for the domain names (i.e. sdocast.com and sdo.com.tw) used by the Infringers (collectively as the "Infringers' Domains") were provided by HE; (ii) the Infringers used services provided by Google based on the MX records[3] for the Infringers' Domains (A copy of the screenshots of the foregoing MX records obtained for the Infringers' Domains is attached hereto as Exhibit B); (iii) the Infringers used the email address "comchw@gmail.com", email service of which is provided by Google; and (iv) the source codes for the websites operated by the Infringers show that they used services provided by Google, including but not limited to AdSense.[4] A copy of the subpoena served on Cloudflare and the relevant part of the response and documents produced by Clodulfare (collectively the "Cloudflare Response") are attached to Declaration of Junji Suzuki as Exhibit A and B respectively, concurrently filed with the Application. The Cloudflare Response contained the name, address, access log and IP addresses. However, since Cloudflare does not verify the identity of a service user, the

[3] https://support.google.com/a/answer/69003?hl=en
[4] https://support.google.com/adsense/answer/9055049?hl=en

-Page 3 of 8-

**In re Ex Parte Application of Shueisha Inc.**
Declaration of Hiroyuki Nakajima in Support of Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding

name and/or address produced by Cloudflare in response to the DMCA Subpoena do not necessarily reveal the true identity of the Infringers. Therefore, access log and IP addresses are the most effective and reliable information to locate the Infringers.

10. Because most of the IP addresses produced in the Cloudflare were located the People's Republic of China ("China"), Applicant retained Da Lin Liao, a Chinese attorney, to assist it in its anticipated lawsuit in Japan or potentially China. Based on Ms. Liao's investigation, most of the IP addresses produced in the Cloudflare Response located in China. However, based on Mr. Liao, in China, there is no legal remedy available for a third party company ensuring disclosure of identifying information of the users from telecommunication companies based on copyright infringement. Declaration of Da Lin Liao is concurrently filed with the Application.

11. As a result, in order to identify the Infringers who committed unlawful acts against Applicant through their Infringing Websites, it is crucial for Applicant to obtain the additional and more reliable information relating to the Infringers, i.e. the information relating to the Witnesses' accounts associated with the Infringer and the Infringing Work, including the names, addresses, telephone numbers, and email addresses for the payment methods registered with the Infringers' accounts with Witnesses, and IP addresses used by the Infringers on the most recent date and the last three months therefrom.

12. IP addresses and access logs on the most recent date and the last three months therefrom are highly relevant and necessary for Applicant. In order to identify an anonymous perpetrator who uploaded infringing material on the internet, in case that the Court may wonder if the duration for access logs should be limited. I explain as follows:

13. Explanation of Terms

    An Internet Service Provider (the "ISP") is an entity which provides internet services for users. An online based service company (the "OBSC") is an entity which provides other services based on the internet, such as server and content services by Witnesses.

-Page 4 of 8-

**In re Ex Parte Application of Shueisha Inc.**
Declaration of Hiroyuki Nakajima in Support of Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding

For example, at first, the communication between the user and ISP is performed before the communication between ISP and Witnesses is performed. In each communication, information such as IP addresses, time stamps (the time when they were used for the communication) and access types are generally recorded. This record is called an "access log". See Exhibit C and D.

The ISP assigns (lends) an IP address to its user when providing the user with internet access services. The IP address assigned (loaned) to the user is changed at set intervals. Thus, the ISP can identify the user by IP address and time stamp (in other words, the access log).

14. How to Identify the Perpetrator by Using the Access Log

The victim can identify the perpetrator by using the access log as follows:

a. The victim of illegal activity on the internet does not know the ISP the perpetrator used. Thus, the victim needs the OBSC to disclose the access log in their possession. Applicant submits the Application for that purpose. See Exhibit C (1).

b. Next, the victim identifies the ISP the perpetrator used by the IP addresses disclosed by the OBSC. Since IP addresses owned by a particular ISP are publicly available, such IP addresses help the victim identify the ISP used by the perpetrator. See Exhibit C (2).

c. Next, the victim submits the access logs (including IP addresses and time stamps) disclosed from the OBSC to the ISP, and requests the perpetrator's information such as his/her name and address. See Exhibit C (3).

d. In this way, the victim is able to obtain the perpetrator's information from the ISP. See Exhibit C (4).

e. Finally, the victim is able to sue the perpetrator. See Exhibit C (5).

Strictly speaking, there is a gap between time stamps recorded by the ISP and those recorded by the OBSC because of the time needed for communication between the

-Page 5 of 8-

**<u>In re Ex Parte Application of Shueisha Inc.</u>**
Declaration of Hiroyuki Nakajima in Support of Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding

ISP and the OBSC. However, this gap is negligibly small and should therefore not present any issue.

15. The Necessity of Disclosure of the Access Log by the OBSC

In almost all cases, the OBSC does not have accurate information necessary to identify the perpetrator. First of all, the OBSC does not obtain the perpetrator's name or address unless the perpetrator volunteers them for using services by the OBSC. In addition, there is a high possibility the information the OBSC may receive from the perpetrator at the time of his/her registration for use of the OBSC's services is fictitious, especially in case of illegal purposes such as posting infringing material. Thus, in almost all cases, the victim has to rely on the method described above to identify the perpetrator. In other words, in almost all cases, having the OBSC disclose an access log is the only way to identify the perpetrator. That is why the access log from the OBSC is critically necessary.

16. All Access Logs Without Duration Limit or At Minimum, Access Log on the Most Recent Date and At the Time of Illegal Activity Should Be Disclosed

Ideally, a single, complete access log should be readily available to enable the victim of defamation on the internet to identify the perpetrator. However, the access log at the time of infringing activity is not always complete, nor does it remain available indefinitely, as explained below. (See Exhibit D). At the same time, it is impossible for the OBSC to identify a single access log from which all the information needed by the victim can be extracted because of the existence of special tools for anonymization (explained below).

As to completeness of a particular log, it is unclear how the provider maintains access logs. For example, some providers often record only time stamps (not IP addresses) at the time of each illegal activity, like posting infringing material or make a payment relating to the infringing activity like in this case. In that case, the victim is unable to identify the ISP, which means that the victim is unable to identify the perpetrator, either.

-Page 6 of 8-

**In re Ex Parte Application of Shueisha Inc.**
Declaration of Hiroyuki Nakajima in Support of Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding

As to how long a particular log remains available, the "latest" log is important. If the perpetrator committed illegal activity (e.g. posting infringing material or make a payment relating to the infringing activity) several months ago, the OBSC or the ISP may have already deleted the access log at the time of such activity. Generally, the retention period of access logs by providers is only 3 to 6 months. Thus, in a large number of cases, the access log at the time of illegal activity has already been deleted by the time a subpoena can be served on the OBSC or the ISP. In addition, even if the access log at the time of illegal activity remains available and disclosed by the OBSC, there is a possibility that the ISP has already deleted the access log when the victim asks the ISP to disclose it.

It should be noted that the perpetrator can prevent the victim from identifying him/her through access logs by using special tools for anonymization such as Tor (The Onion Router) or Proxy (collectively, the “Special Tools”), mainly used in the dark web. The perpetrator sometimes uses the Special Tools and at other times does not. The victim can possibly identify the perpetrator from the access logs only if the perpetrator does not use the Special Tools. The victim (and the OBSC), however, cannot specify access logs from which the information sought may be ascertained because the victim does not know when and whether the perpetrator used the Special Tools.

17. Therefore, all access logs, including the most recent logs, need to be disclosed as long as they are presumed to be those of the same perpetrator. For example, access logs identifying the same Witnesses’ accounts of the perpetrator are presumed to belong to the perpetrator.

18. The accounts used by the Infringers subject to the proposed subpoenas are maintained by HE[5] and Google[6] located in Fremont and Mountain View, California, respectively.

[5] https://he.net/contacts.html
[6] https://about.google/intl/en_us/locations/?region=north-america&office=mountain-view

-Page 7 of 8-

**In re Ex Parte Application of Shueisha Inc.**
Declaration of Hiroyuki Nakajima in Support of Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding

Any of Witnesses is not a party to the anticipated lawsuit in Japan or China described above.

19. I am not aware of any restrictions imposed by or any policies under Japanese law limiting the proof-gathering proceeding in the manner proposed and for the purposes stated herein and in the Application.

20. Based on the above, the documents sought from Witnesses are highly relevant to Applicant's anticipated lawsuit in Japan or China and are narrowly tailored and limited to the discovery materials related to the Witnesses' accounts subject to the proposed subpoenas through which the identities of the defendants to the anticipated lawsuit could be ascertained and nothing further.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: October 21, 2021

By: Hiroyuki Nakajima
Hiroyuki Nakajima

-Page 8 of 8-

**In re Ex Parte Application of Shueisha Inc.**
Declaration of Hiroyuki Nakajima in Support of Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding

Exhibit A

| | Title of Original Work | Author of Original Work | Original Work | Infringing Work | Title of Infringing Work |
|---|---|---|---|---|---|
| 1 | キングダム（KINGDOM） | 原泰久（Yasuhisa Hara ） | https://youngjump.jp/kingdom/comics/ | https://ssl.axax.cloud/wp-content/uploads/2021/01/1/e9b6ebafea5695c3bedaee01231e8e32-750x1059.jpg | キングダム |
| 2 | キングダム（KINGDOM） | 原泰久（Yasuhisa Hara ） | https://youngjump.jp/kingdom/comics/ | https://ssl.advx.cloud/wp-content/uploads/2021/01/1/e9b6ebafea5695c3bedaee01231e8e32-750x1059.jpg | キングダム |
| 3 | キングダム（KINGDOM） | 原泰久（Yasuhisa Hara ） | https://youngjump.jp/kingdom/comics/ | https://ssl.akkx.net/wp-content/uploads/2021/01/1/e9b6ebafea5695c3bedaee01231e8e32-750x1059.jpg | キングダム |
| 4 | キングダム（KINGDOM） | 原泰久（Yasuhisa Hara ） | https://youngjump.jp/kingdom/comics/ | https://ssl.sdox.cc/wp-content/uploads/2021/01/1/e9b6ebafea5695c3bedaee01231e8e32-750x1059.jpg | キングダム |
| 5 | キングダム（KINGDOM） | 原泰久（Yasuhisa Hara ） | https://youngjump.jp/kingdom/comics/ | https://ssl.standardcdn.net/wp-content/uploads/2021/01/1/e9b6ebafea5695c3bedaee01231e8e32-750x1059.jpg | キングダム |
| 6 | キングダム（KINGDOM） | 原泰久（Yasuhisa Hara ） | https://youngjump.jp/kingdom/comics/ | https://ssl.lsh.buzz/wp-content/uploads/2021/01/1/e9b6ebafea5695c3bedaee01231e8e32-750x1059.jpg | キングダム |
| 7 | キングダム（KINGDOM） | 原泰久（Yasuhisa Hara ） | https://youngjump.jp/kingdom/comics/ | https://ssl.appx.buzz/wp-content/uploads/2021/01/1/e9b6ebafea5695c3bedaee01231e8e32-750x1059.jpg | キングダム |
| 8 | キングダム（KINGDOM） | 原泰久（Yasuhisa Hara ） | https://youngjump.jp/kingdom/comics/ | https://ssl.axax.cloud/wp-content/uploads/2021/03/aa/a639a5115319dad1de9057d3f32793ae-750x1059.jpg | キングダム |
| 9 | キングダム（KINGDOM） | 原泰久（Yasuhisa Hara ） | https://youngjump.jp/kingdom/comics/ | https://ssl.asiax.cloud/wp-content/uploads/2021/03/aa/a639a5115319dad1de9057d3f32793ae-750x1059.jpg | キングダム |
| 10 | キングダム（KINGDOM） | 原泰久（Yasuhisa Hara ） | https://youngjump.jp/kingdom/comics/ | https://ssl.axax.cloud/wp-content/uploads/2021/02/5e/a05bdf654ba37f6cbfd70bec2e10bfc5-750x1059.jpg | キングダム |
| 11 | キングダム（KINGDOM） | 原泰久（Yasuhisa Hara ） | https://youngjump.jp/kingdom/comics/ | https://ssl.appsx.cloud/wp-content/uploads/2021/02/5e/a05bdf654ba37f6cbfd70bec2e10bfc5-750x1059.jpg | キングダム |
| 12 | キングダム（KINGDOM） | 原泰久（Yasuhisa Hara ） | https://youngjump.jp/kingdom/comics/ | https://ssl.axax.cloud/wp-content/uploads/2021/02/5e/782b196521028c8b2e13d12dc5f5df93-750x1059.jpg | キングダム |
| 13 | キングダム（KINGDOM） | 原泰久（Yasuhisa Hara ） | https://youngjump.jp/kingdom/comics/ | https://ssl.axax.cloud/wp-content/uploads/2021/02/5e/b70c51b5f59b7cd98311a6189d599e06-750x1059.jpg | キングダム |
| 14 | ONE PIECE | 尾田　栄一郎（Eiichiro Oda ） | https://www.shonenjump.com/j/rensai/onepiece.html | https://ssl.axax.cloud/wp-content/uploads/2021/03/31/780cbe34f6dd84715f306dae3ba93240-750x1095.jpg | ONE PIECE |
| 15 | ONE PIECE | 尾田　栄一郎（Eiichiro Oda ） | https://www.shonenjump.com/j/rensai/onepiece.html | https://ssl.axax.cloud/wp-content/uploads/2021/03/31/98d4def780e0a7d1c6a02f3022002657-750x1095.jpg | ONE PIECE |
| 16 | ONE PIECE | 尾田　栄一郎（Eiichiro Oda ） | https://www.shonenjump.com/j/rensai/onepiece.html | https://ssl.axax.cloud/wp-content/uploads/2021/03/02/60e1e911f2d9e3af43199296e97fd0ef-750x1178.jpg | ONE PIECE |
| 17 | ONE PIECE | 尾田　栄一郎（Eiichiro Oda ） | https://www.shonenjump.com/j/rensai/onepiece.html | https://ssl.axax.cloud/wp-content/uploads/2021/03/02/98b455e620bc7c8a086ba9e67c7091f5-750x1178.jpg | ONE PIECE |
| 18 | 僕のヒーローアカデミア(My Hero Academia) | 堀越耕平（Kohei Horikoshi） | https://www.shonenjump.com/j/rensai/myhero.html | https://ssl.axax.cloud/wp-content/uploads/2021/01/7/57a175d3c2e740905337dfc9460b992b-750x1178.jpg | 僕のヒーローアカデミア |
| 19 | 僕のヒーローアカデミア(My Hero Academia) | 堀越耕平（Kohei Horikoshi） | https://www.shonenjump.com/j/rensai/myhero.html | https://ssl.axax.cloud/wp-content/uploads/2021/01/7/f3d3df1d322accfad83a205fc86850d4-750x1178.jpg | 僕のヒーローアカデミア |

**EXHIBIT A**

```
選択コマンド プロンプト - nslookup
> set type=mx
> sdo.com.tw
サーバー:  buffalo.setup
Address:  192.168.11.1

権限のない回答:
sdo.com.tw      MX preference = 5, mail exchanger = alt2.aspmx.l.google.com
sdo.com.tw      MX preference = 5, mail exchanger = alt1.aspmx.l.google.com
sdo.com.tw      MX preference = 1, mail exchanger = aspmx.l.google.com
sdo.com.tw      MX preference = 10, mail exchanger = alt4.aspmx.l.google.com
sdo.com.tw      MX preference = 10, mail exchanger = alt3.aspmx.l.google.com

sdo.com.tw      nameserver = ns3.he.net
sdo.com.tw      nameserver = ns2.he.net
sdo.com.tw      nameserver = ns1.he.net
sdo.com.tw      nameserver = ns5.he.net
sdo.com.tw      nameserver = ns4.he.net
alt1.aspmx.l.google.com internet address = 142.250.115.26
alt1.aspmx.l.google.com AAAA IPv6 address = 2607:f8b0:4023:1004::1b
aspmx.l.google.com      internet address = 74.125.203.26
aspmx.l.google.com      AAAA IPv6 address = 2404:6800:4008:c02::1b
alt4.aspmx.l.google.com internet address = 172.253.113.26
alt4.aspmx.l.google.com AAAA IPv6 address = 2607:f8b0:4023:1::1a
alt3.aspmx.l.google.com internet address = 142.250.152.26
alt3.aspmx.l.google.com AAAA IPv6 address = 2607:f8b0:4001:c56::1a
alt2.aspmx.l.google.com internet address = 64.233.171.26
alt2.aspmx.l.google.com AAAA IPv6 address = 2607:f8b0:4003:c15::1b
ns4.he.net      internet address = 216.66.1.2
ns4.he.net      AAAA IPv6 address = 2001:470:400::2
>
```

```
コマンド プロンプト - nslookup
> sdocast.com
サーバー:  buffalo.setup
Address:  192.168.11.1

権限のない回答:
sdocast.com     MX preference = 5, mail exchanger = alt2.aspmx.l.google.com
sdocast.com     MX preference = 10, mail exchanger = alt3.aspmx.l.google.com
sdocast.com     MX preference = 10, mail exchanger = alt4.aspmx.l.google.com
sdocast.com     MX preference = 1, mail exchanger = aspmx.l.google.com
sdocast.com     MX preference = 5, mail exchanger = alt1.aspmx.l.google.com

sdocast.com     nameserver = ns4.he.net
sdocast.com     nameserver = ns5.he.net
sdocast.com     nameserver = ns1.he.net
sdocast.com     nameserver = ns2.he.net
sdocast.com     nameserver = ns3.he.net
ns1.he.net      internet address = 216.218.130.2
ns1.he.net      AAAA IPv6 address = 2001:470:100::2
ns2.he.net      internet address = 216.218.131.2
ns2.he.net      AAAA IPv6 address = 2001:470:200::2
ns3.he.net      internet address = 216.218.132.2
ns3.he.net      AAAA IPv6 address = 2001:470:300::2
ns4.he.net      internet address = 216.66.1.2
ns4.he.net      AAAA IPv6 address = 2001:470:400::2
ns5.he.net      internet address = 216.66.80.18
ns5.he.net      AAAA IPv6 address = 2001:470:500::2
>
```

**EXHIBIT B**



Exhibit C

**How to Identify the Perpetrator by Using Access Log**

Exhibit  D

**Sample of Access Log**

Access Log as of 2018/12/31

| Time Stamp | IP address |
|---|---|
| 2018/12/29-23:50:45-UTC | Unknown |
| 2018/11/28-21:40:35-UTC | 123.456.789.12 |
| 2018/10/27-19:30:25-UTC | Unknown |
| 2018/09/26-17:20:15-UTC | 123.456.789.12 |
| 2018/08/25-15:10:05-UTC | 987.654.321.98 |
| 2018/07/24-13:00:55-UTC | Unknown |
| 2018/06/23-11:50:45-UTC | 987.654.321.98 |
| 2018/05/22-09:40:35-UTC | 987.654.321.98 |
| 2018/04/21-07:30:25-UTC | Unknown |

Server does not always register full information of access log

Victim does not know which access log is sufficient to identify the perpetrator

Access log at the time of posting

There is a possibility that server has already deleted these access logs

There is a high possibility that server has already deleted these access logs